UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* JOHN DOE, RELATOR, <br><br>Plaintiffs, <br><br>v. <br><br>BIOTRONIK, INC., et al., <br><br>Defendants. | No. 2: 09-cv-3617 KJM EFB <br><br><br>ORDER |

On July 10, 2014, the court heard argument on defendants' and relator's motion to maintain the seal over the complaint in this *qui tam* case. Christopher Myers and John Irving appeared for defendant Biotronik; McGregor Scott appeared for defendant Western Medical, Inc.; Adam Schwartz and Kelli Taylor appeared for the United States; Emmanuel Salazar appeared for the State of California; and Tiffany Tran appeared for the relator.

After considering the parties' arguments, the court DENIES Biotronik's motion in part and GRANTS Biotronik's motion as to the patient information contained in an exhibit to the complaint. It DENIES relator's motion.

I. BACKGROUND

On December 31, 2009, relator John Doe filed a complaint under seal, alleging generally that defendant Biotronik and employees of Western Medical, whom Biotronik used as

an independent sales force, provide kickbacks in several forms to physicians who use Biotronik's cardiac rhythm management devices and promote the use of the devices in patients who may not need them. Compl., ECF No. 1 ¶¶ 1-6. For example, Biotronik invited physicians to be consultants, speakers, or trainers as a way of paying physicians for implanting its devices and paid them for "research" related to the implantation of the devices. *Id*. ¶¶ 35-37, 39, 43. In addition, Biotronik gave gifts of tickets to sporting events, Broadway shows, and operas; paid for meals and alcohol; and provided trips to vacation spots for physicians who implanted large quantities of devices. *Id*. ¶¶ 54, 56-58.

Doe also alleged that Biotronik caused physicians to bill Medicare and Medicaid and the military's TRICARE program for using its devices for off-label purposes, which is not reimbursable. *Id*. ¶¶ 93-94, 96.

The complaint contains five federal claims: (1) a violation of the False Claims Act based on kickbacks; (2) a conspiracy to violate the False Claims Act based on kickbacks; (3) a violation of the False Claims Act based on billing for off-label uses; (4) a conspiracy to violate the False Claims Act based on off-label billing; and (5) a violation of the False Claims Act based on defendants' fraudulent promotion of cardiac rhythm devices. It is supported by a number of exhibits, chiefly internal Biotronik documents.

The United States has requested several extensions of time in order to decide whether to intervene in the action. ECF Nos. 8, 21, 26, 30, 36, 38, 40, 44. The government also has asked for partial lifting of the seal in order to provide defendants and various states named as plaintiffs with a copy of the complaint. ECF Nos. 16, 34. To date, the court has granted the government's requests.

On January 24, 2014, the government filed its ninth application for an extension of time to decide whether to intervene; relator opposed the motion. ECF Nos. 47, 48. The court found no good cause to extend the sealing and directed the government to reach a decision on intervention with fourteen days of the date of the order. ECF No. 49. On May 14, 2014, the United States intervened in part for purposes of effectuating a settlement. ECF No. 51. The court

////

then established a briefing schedule to address whether the action should remain sealed.  ECF No. 53.

Biotronik filed its motion to maintain the seal on May 27, 2014.  ECF No. 60. Relator has joined in the motion and the government has opposed.  ECF Nos. 61, 66.

On June 5, 2014, the court ordered the complaint dismissed in accordance with federal and Nevada settlement agreements with Biotronik and the relator.  ECF No. 69.

II.  ANALYSIS

Title 31 U.S.C. section 3730 authorizes a private person to bring an action for violations of the False Claims Act and to file it *in camera*, with the seal to remain in effect for at least sixty days and thereafter, should the government seek extensions of time in which to investigate and decide whether to intervene in the action.  31 U.S.C.  § 3730(b)(1)-(3).[1]  These sealing provisions "strike a balance between the purposes of *qui tam* actions [and] . . . law enforcement needs [.]"  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995 ) (internal quotations omitted).  If the government elects not to intervene, "the relator must unseal the complaint and serve the putative defendants.  The case then proceeds as any other civil action."  *United States ex rel. Aflatooni v. Kitsap Physicians Serv*. 314 F.3d 995, 998 n.2

---

[1] This subsection of the statute reads as follows:

(b) Actions by private persons.--(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. [footnote omitted] The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

3

(9th Cir. 2002); *see also Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011) (stating that if the court declines to extend the seal on the government's request, the complaint and the government's extension requests are unsealed and if the government intervenes, the case is unsealed).

"[T]he district court presiding over a given *qui tam* action 'has the authority to unseal the documents filed before the government intervene[s] in [a] *qui tam* case and 'has wide discretion in how to determine what documents, if any should remain under seal, and how to make that determination.'" *United States ex rel. Smart v. CHRISTUS Health*, Civil Action No. 2:05–CV–287, 2013 WL 2289883, at *5 (S.D. Tex. May 22, 2013) (quoting *United States ex rel. Becker v. Tools & Metals, Inc.*, Civil Action Nos. 3:05-CV-0627-L, 3:05-CV-2301-L, 2008 WL 3850522, at *2 (N.D. Tex. Aug. 19, 2008)), *aff'd,* 563 F. App'x 314 (5th Cir. 2014).

There is a general presumption in favor of public access to court records. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). However, "access to judicial records is not absolute." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006). "[I]f the court decides to seal certain judicial records [after conscientiously balancing the competing interests of the public and the party who seeks to keep certain judicial records secret], it must 'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Id.* at 1179 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. (quoting *Nixon v. Warner Communs., Inc*., 435 U.S. 589, 598 (1978))**.** However, "'good cause' suffices to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions." *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Phillips*, 307 F.3d at 1213). Although the parties have pointed the court to no Ninth Circuit case discussing what standard applies to the unsealing of complaints in *qui tam* actions, at least one court in this district has applied the good cause standard in deciding whether to seal the deposition testimony

of a potential *qui tam* relator. *See In re Uehling*, No. 1:13–mc–00022–BAM, 2014 WL 2506150, at *3 (E.D. Cal. May 30, 2014) (rejecting relator's request to seal his deposition testimony); *see also Am. Civil Liberties Union*, 673 F.3d at 254 (stating that when party seeks access to applications, the "good cause" standard for sealing in § 3730(b)(3) "is the same standard contained in Rule 26 of the Federal Rules of Civil Procedure, which permits a federal court to require that certain matters be sealed); *United States ex rel. Gale v. Omnicare, Inc*., No. 1:10–cv–127, 2013 WL 3717755, at *1-2 (N.D. Ohio July 12, 2013) (applying good cause standard).

Under Rule 26(c), "the party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130. "'Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible, by affidavits and concrete examples, rather than broad, conclusory allegations of harm.'" *Contratto v. Ethicon, Inc*., 227 F.R.D. 304, 307-08 (N.D. Cal. 2005) (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987). Only if the party seeking protection makes an initial showing of harm from disclosure will the court balance the interests to decide whether to issue a protective order. *Phillips*, 307 F.3d at 1211.

A.  Biotronik's Motion

Biotronik argues that unsealing the complaint sheds no light on the judicial process, yet will expose unfounded allegations against it as well as its confidential business information. Mot., ECF No. 60-1 at 4.

Although the parties agree that patient health information in Exhibit Four should be sealed, they agree on little else. The government argues the sealing provisions of the False Claims Act are designed only to protect the government. *See, e.g., United States ex rel. Summers v. LHC Grp., Inc*., 623 F.3d 287, 292 (6th Cir. 2010) ("[T]he primary purpose of the under-seal requirement is to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene in the case filed by the relator; *Lujan*, 67 F.3d 242, 245 (9th Cir. 1995) (stating the sealing provisions of the False Claims Act were

designed to encourage more private false claims litigation while giving the government time to evaluate whether to intervene or pursue criminal investigation); S. Rep. No. 3345, 99th Cong., 2d Sess. 24, *reprinted in* 1986 U.S.C.C.A.N. 5266 at 5289, 1986 WL 31937, at *24 ("Keeping the *qui tam* complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action.").

At hearing, Biotronik acknowledged case law is sparse if not nonexistent on the question of a permanent seal for a *qui tam* action. It cited to the legislative history of certain 2008 amendments to the False Claims Act, which stated the purpose of the sealing provisions "was two-fold: to provide the Department of Justice an opportunity to decide if the case was meritorious and worthy of the Department taking over the case, and to protect the defendant from unfounded accusations." S. Rep. No. 507, 110th Cong., 2d Sess., 2008 WL 4415147, at *4. The court acknowledges this language, but notes it was part of a lengthy analysis of the history of the Act, provided as background for amendments unrelated to the sealing provisions. The court does not read this statement as providing an additional reason for sealing; it has found no decision so interpreting this language. The court rather follows those cases finding the FCA's sealing provisions were designed to protect the government's decision-making process, not the defendant's reputation.

Biotronik argues that unsealing the complaint will subject the defendants and the physicians named in the complaint "to public ridicule and scandal." ECF No. 60-1 at 5-7. However, "[s]imply showing that public access would harm the company's reputation is generally not sufficient to justify sealing a court record." *In re Perrigo Co.*, 128 F.3d 430, 448 (6th Cir. 1997); *see also Doe v. Univ. of Montana*, No. CV 12-77-M-DLC, 2012 WL 2416481, at *3 (D. Mont. Jun. 26, 2012) (potential harm to the reputation of university personnel "is an insufficient legal basis to justify sealing in this case"). Although Western Medical did not file a separate motion, it argued at hearing about its inability to counter the allegations of the complaint should it be unsealed.

6

1    As the government points out, however, information about Biotronik's alleged
2 practices and its connection with Western Medical was published in *The New York Times* in 2011,
3 as well as in news outlets in Nevada and Oregon. ECF No. 66 at 5.
4    Western Medical has not provided any information about the impact of the earlier
5 publicity on its reputation or business. Biotronik does say that after these articles appeared,
6 several doctors have declined to begin or continue as consultants while others have decided not to
7 participate in clinical studies; some hospitals also have decided not to purchase Biotronik's
8 devices while the Justice Department's investigation was pending. Decl. of Jon Brumbaugh, ECF
9 No. 60-2 ¶ 10.
10    While Biotronik thus has provided some evidence of harm from the earlier
11 publicity, after balancing the public interest against its reasons for secrecy, the court finds
12 Biotronik has not established good cause for sealing. According to the declaration of
13 Brumbaugh, Vice President of Regulatory and Compliance, most of the impact on Biotronik's
14 business was the result of the Justice Department's investigation rather than the allegations of
15 wrongdoing themselves. It is not clear what effect unsealing the complaint will have on
16 Biotronik's business, if any. Moreover, the unsealed action will make clear the government's
17 limited participation in the case, which the relator has dismissed. *See United States v. Iss Marine*
18 *Servs., Inc.*, 905 F. Supp. 2d 121, 141-42 (D.D.C. 2012) (declining to seal an administrative
19 subpoena because government's investigation of company was public knowledge).
20    Biotronik also argues that unsealing the complaint will harm the reputation of the
21 physicians alleged to have accepted meals and payments. While not flattering, the court does not
22 consider these allegations to be scandalous or otherwise so harmful to these physicians as to
23 warrant sealing or even redacting. *See* ECF No. 60-1 at 6-7.
24    1. Medical Information
25    Biotronik argues that Exhibit 4 to the complaint contains patient information,
26 including names and the serial numbers of their devices, as well as information about physician
27 visits. It says other exhibits refer to a clinical study, which might lead to other patient
28 information. The court agrees this information should be redacted. *See Foltz*, 331 F.3d at

7

1136-37 (stating that medical information can be redacted while leaving other "meaningful information" intact). Indeed, even though the complaint was filed under seal, relator should have redacted this information before filing it. Local Rule 140(a); 42 C.F.R. § 164.502(a).

### 2. Trade Secrets and Confidential Business Information

Biotronik argues the many internal documents attached to the complaint, as well as some allegations of the complaint, contain trade secrets subject to protection. ECF No. 60-1 at 8-9. Specifically it argues the complaint reveals how it conducts clinical studies, selects physician-consultants, compensates doctors who train Biotronik personnel and trains its representatives. Compl. ¶¶ 3, 28, 39-42, 43-53 & Exs. 1-15. It supports this part of its motion with the Brumbaugh declaration as well. He describes the measures Biotronik has taken to keep its information about clinical studies, physician selection, and compensation confidential. Brumbaugh Decl. ¶ 9.

"A 'trade secret may consist of a formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know it or use it.'" *In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished) (quoting *Restatement of Torts* § 757, cmt. b). The paragraphs of the complaint Biotronik cites describe the payments to doctors and the way in which alleged kickbacks were disguised as training physicians provided to representatives. *See* ECF No. 1 ¶¶ 43-52. Biotronik has not shown that these practices qualify as trade secrets deserving of protection.

There is, however, information in paragraphs 3, 40, 42, 43 and 49 and Exhibits 1 and 5 about payments to physicians, which could give competitors an advantage in structuring their approaches to doctors. *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, Civil No. 12-00565 ACK-KSC, 2014 WL 1234506, at *3 (D. Haw. Mar. 24, 2014) (approving the redaction of pricing information that could give competitors an advantage). This information may be redacted. Other than that, the paragraphs shed little light on Biotronik's practices apart from its push to boost sales by engaging with physicians to be trainers and consultants. Exhibits 2 to 3 and 5 to 15 again involve seminars and training, which provide little information about

1   Biotronik's internal practices.  Biotronic has not shown how unsealing this information will harm
2   it.
3        B.  Relator's Motion
4           Relator argues that any unsealing should continue to protect his identity because
5   he "works in an industry where exposed relators like himself are nearly certain to never be
6   employed again in the field, not just by Biotronik but by any other medical device or
7   pharmaceutical company."  Mem. P. & A., ECF No. 61 at 4.  He asks that, if the seal is lifted, his
8   identity be redacted from several exhibits and he be allowed to remain "John Doe."
9           In *United States ex rel. Danner v. Quality Health Care, Inc*., another district court
10  said that because the False Claims Act contemplates the unsealing of *qui tam* proceedings,
11  "relator accepted the risk of her identity becoming known when she decided to initiate this
12  action."  No. 11-4026-CM-KMH, 2011 WL 4971453, at *2 (D. Kan. Oct. 18, 2011).  It
13  continued, noting that the "expressed concerns are the same concerns that could be advanced by
14  any person suing a former employer or alleging fraud."  *Id*. at *3.  Relator cannot rely on the
15  continued sealing of this action to protect his identity.
16          Moreover, Federal Rule of Civil Procedure 10 requires a complaint to "name all
17  the parties."  FED. R. CIV. P. 10(a).  This rule reflects "the paramount importance of open courts"
18  such that the "default presumption is that plaintiffs will use their true names."  *Doe v.*
19  *Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1046 (9th Cir. 2010).  Only
20  "'in an unusual case,'" where "'necessary to protect a person from injury or harassment,'" are
21  pseudonyms permitted.  *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) (quoting
22  *United States v. Doe*, 488 F.3d 1154, 1156 n.1 (9th Cir. 2007)).  The determination of necessity is
23  "a district court's discretionary decision," but the court must balance "the [moving] party's need
24  for anonymity . . . [against] prejudice to the opposing party and the public's interest in knowing
25  the party's identity."  *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir.
26  2000).
27          When a party seeks to use a pseudonym because of threatened retaliation, the court
28  "must balance five factors: '(1) the severity of the threatened harm, (2) the reasonableness of the

anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest." *Kamehameha*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1068).

In this case, relator at first provided a statement in a memorandum of points and authorities suggesting he will be subjected to retaliation for his participation in this lawsuit. Not until August 1, after the motion was submitted, did he submit a declaration describing his cooperation with the government and his fears that he will be blackballed by others in his field. Beyond his expressed fears, however, he has provided no examples of retaliatory actions against others by medical device makers or by the physicians who are his customers. There is nothing in relator's declaration showing that his fears are reasonable or his particular vulnerability to retaliation.

There is little prejudice to defendants, who, as noted, are aware of relator's identity and, given the settlement, have no need to undertake discovery. However, as the purpose of *qui tam* actions is to further the public interest, *United States v. Northrop Corp.*, 59 F.3d 953, 968 (9th Cir. 1995), the public has an interest in knowing who served its interest and indeed, who profited from pursuing the public good. *See United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F. 3d 230, 233 (9th Cir. 1997) (stating that "a relator who properly brings a claim will generally receive a share of the recovery").

IT IS THEREFORE ORDERED that:

1. Biotronik's motion to seal the complaint is granted as to Exhibit 4 but denied in all other respects;

2. Relator's motion to seal is denied;

3. Within fourteen days of the filed date of this order, the parties are directed to file the complaint identifying relator, redacting the payment information in paragraphs 3, 40, 42, 43 and 49 and Exhibits 1 and 5, and submitting Exhibit 4 separately for filing under seal; and

/////

/////

/////

4. Upon filing of the complaint as directed above, the docket in this action will be unsealed.

DATED:  August 14, 2014.

_____
UNITED STATES DISTRICT JUDGE