UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; THE STATES OF ARKANSAS, CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MICHIGAN, MASSACHUSETTS, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, AND WISCONSIN, AND THE DISTRICT OF COLUMBIA, ex rel. JOHN DOE, Relator,<br><br>Plaintiffs,<br><br>v.<br><br>BIOTRONIK, INC. and WESTERN MEDICAL, INC.,<br><br>Defendants. | No. 2:09-cv-3617-KJM-EFB<br><br>ORDER |

This matter was before the court on March 18, 2015, for hearing on the relator, Brian Sant, and his counsel Mychal Wilson and Kershaw, Cutter & Ratinoff, LLP's (collectively referred to as "fee claimants") motion to compel the production of defendant's relevant billing records. ECF No. 113. Attorney Jeremy Friedman appeared on behalf of fee claimants; attorneys

/////

/////

1

Vince Farhat and Christopher Myers appeared on behalf of defendant.[1]  For the following reasons, the motion is granted in part and denied in part.

I.      Background

On December 31, 2009, relator filed a *qui tam* complaint under seal, alleging, among other things, that defendant Biotronik provided kickbacks to physicians who use Biotronik's cardiac rhythm management devices.  ECF No. 1 ¶¶ 1-6.  The complaint also alleged that Biotronik caused physicians to bill Medicare and Medicaid and the military's TRICARE program for using its devices for off-label purposes, which is not reimbursable.  *Id*. ¶¶ 93-94, 96.  The complaint contains five federal claims: (1) a violation of the False Claims Act based on kickbacks; (2) a conspiracy to violate the False Claims Act based on kickbacks; (3) a violation of the False Claims Act based on billing for off-label uses; (4) a conspiracy to violate the False Claims Act based on off-label billing; and (5) a violation of the False Claims Act based on defendants' fraudulent promotion of cardiac rhythm devices.

After receiving numerous extensions of time, on May 14, 2014, the United States intervened in part for purposes of effectuating a settlement.  ECF No. 51.  On June 5, 2014, the court dismissed the complaint pursuant to the United States and Nevada's settlement agreements with Biotronik and relator, ECF No. 69, and judgment was entered accordingly, ECF No. 70.  Kershaw, Cutter & Ratinoff ("KCR") and Wilson subsequently filed separate motions for attorneys' fees for their work performed on behalf of the relator.  ECF Nos. 80, 91.  KCR seeks a total of $897,347 for fees and costs, while Wilson seeks a total of $1,181,300.  ECF Nos. 80, 91.  Defendant filed a consolidated opposition to fee claimants' motions.  ECF No. 100.  The hearing on the fee motions is currently set for April 24, 2015, with fee claimants' reply briefs due March 27, 2015.  ECF No. 107, 108.

Both Wilson and KCR have served defendant with discovery requests seeking information related to the attorneys' fees it incurred in defending this action.  ECF No. 117 at 5, 36-52.  Defendant filed objections to the discovery requests.  *Id*. at 6.  The parties met and conferred in an

---

[1] Christopher Myers appeared telephonically.

attempt to resolve their dispute, but ultimately no resolution was obtained. The instant motion to compel followed. ECF No. 113. The parties have submitted their joint statement, which focuses on a central dispute of whether the billing records sought are relevant to the pending fee motions.

II.     Standard

A district court may permit a party to conduct discovery related to a motion for attorneys' fees. *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000). However, the U.S. Court of Appeals for the Ninth Circuit has declined "to adopt a rule that a district court must grant a request for discovery of contemporaneous time records in every case in which attorney fees are sought." *Id*. Under the Federal Rules of Civil Procedure ("Rule"), upon notice, a party may move for an order compelling discovery after a good faith attempt to confer with a party failing to make disclosure or discovery. Fed. R. Civ. P. 37(a)(1) and (3); *see also* E.D. Cal. L.R. 251. Rule 26(b)(1) provides that the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Ibanez v. Miller*, 2009 WL 1706665, at *1 (E.D. Cal. Oct. 22, 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Moreover, "[t]he question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Id*. (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).

Additionally, Rule 26(b)(2)(C) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

III.     Discussion

This dispute concerns five interrogatories and three requests for production of documents served by KCR, as well as four requests for production served by Wilson. ECF No 117 at 36-51. These discovery requests seek information as to the attorneys' fees Biotronik incurred in this litigation. *Id*. Specifically, they request information regarding the number of attorneys' hours billed and the hourly rates charged for those hours for the representation of Biotronik in this case by the law firm Holland & Knight ("H&K"). *Id*.

Fee claimants' theory for the relevancy of this information is predicated on Biotronik's challenge to the reasonableness of the fees sought in the pending attorney fee motions. Fee claimants explain that Biotronik challenges their requests for fees on a number of grounds, including that: (1) fee claimants improperly seek fees for work performed on unsuccessful claims and collateral issues, (2) KCR impermissibly seeks fees for work performed by Andrew Prough;[2] (3) the hourly rates charged by each fee claimant are unreasonable, and (4) the number of hours expended and rates charged for preparation of the fee petition are excessive. ECF No. 117 at 7.

Fee claimants contend that they have a right to know if H&K "submitted bills to their own client that (a) included similarly overlapping work on a common core of facts and theories underlying numerous claims; (b) charged rates equal to or greater than those sought by the fee claimants; (c) billed for the types of expenses they now characterize as excessive or noncompensable; and/or (d) include dbilling [sic] entries of the type Biotronik now attacks as vague, duplicative, or 'block-billed.'" ECF No. 117 at 9. As succinctly put by the fee claimants: "if Biotronik's argument [in its opposition to the motions for attorneys' fees] is hypocritical, the Court should not tolerate it . . . ." *Id*.

Biotronik argues that H&K's billing records are not relevant to the pending motions because, contrary to fee claimants'' contention, Biotronik does not seek a reduction of fees based on a claim that counsel spent too much time on any particular tasks. ECF No. 117 at 18. Rather,

---

[2] Fee claimants seek fees for work Mr. Prough allegedly performed as a paralegal. Defendant claims that Mr. Prough is an investigator and not a paralegal. *See* ECF No. 100 at 27-31.

4

1  Biotronik argues that the fee claimants are not entitled to fees for any hours expended on certain
2  tasks because they were unrelated to the settlement reached in this case. *Id*. Biotronik also
3  contends that any relevance that the billing records have is greatly outweighed by the prejudice
4  that would result from Biotronik or H&K being ordered to produce its confidential billing
5  records. Biotronik contends that its records contain time narratives that are privileged and
6  confidential information and producing such documents would require substantial and careful
7  review and redaction before production. *Id*. at 27. Further, defendant contends that the hourly
8  rates charged by H&K are irrelevant, as the firm is not located in the relevant geographical area.
9  *Id*. at 14.

10  As part of their settlement agreement, the parties agreed that relator is statutorily entitled
11  to fees and costs. ECF No. 117 at 4. The False Claims Act provides that successful relators are
12  entitled to "receive an amount for reasonable expenses which the court finds to have been
13  necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs
14  shall be awarded against defendant." 31 U.S.C. § 3730(d). In determining the reasonableness of
15  attorneys' fees, the Ninth Circuit uses the lodestar method. *Moreno v. City of Sacramento*, 534
16  F.3d 1106, 1111 (9th Cir. 2008). In applying the lodestar method, "a district court must start by
17  determining how many hours were reasonably expended on the litigation, and then multiply those
18  hours by the prevailing local rate for an attorney of the skill required to perform the litigation."
19  *Id*. "In addition to computing a reasonable number of hours, the district court must determine a
20  reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount."
21  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013)."

22  As noted, this discovery dispute focuses on two related but separate issues. The first is
23  whether the number of hours billed by H&K are relevant to the fee petitions currently pending
24  before the district court. The other is whether the hourly rates charged by H&K's attorneys are
25  relevant to the pending fee petitions. The court addresses each in turn.

26  A. <u>Number of Hours</u>

27  "The fee applicant bears the burden of documenting the appropriate hours expended in the
28  litigation and must submit evidence in support of those hours work." *Gates v. Deukmejian*, 987

1  F.2d 1392, 1397 (9th Cir. 1992).  "[E]xcessive, redundant, or unnecessary" hours should be

2  excluded from the lodestar calculation.  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041,

3  1045 (9th Cir. 2000).  The Ninth Circuit has stated:

> While comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party . . . does not necessarily indicate whether the hours expended by the party seeking fees were excessive because numerous factors can cause the prevailing party to have spent more time than the losing party, *such a comparison is a useful guide* in evaluating the appropriateness of time claimed."

*Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (emphasis added, quotation marks omitted) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (per curiam)).  The Ninth Circuit, however, has cautioned that in conducting a comparison of hours expended, the court must consider that "opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on . . . as well as for the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work."  *Ferland*, 244 F.3d at 1151.

Although the Ninth Circuit has characterized such a comparison useful although not decisive, some district courts in this circuit have found that the time opposing counsel expended in an action has little bearing on the reasonableness of a request for attorney's fees.  *See Deocampo v. Potts*, 2:06-1283 WBS CMK, 2014 WL 788429, at *2 (E.D. Cal. Feb. 25, 2014); *eMove Inc. v. SMD Software, Inc.*, 2012 WL 4856276, at *6 (D. Ariz. Oct. 11, 2012); *Moore v. Bank of America*, N.A. (USA), 2008 WL 68851, at *3 (S.D. Cal. Jan.7, 2008); *Love v. Mail on Sunday*, 2007 WL 2709975, at *10 (C.D. Cal. Sept.7, 2007); *Miller v. Vicorp Restaurants, Inc.*, 2006 WL 212021, at *3 (N.D. Cal. Jan.11, 2006).  Other district courts have considered, at least to some degree, opposing counsel's hours in assessing the reasonableness of the hours requested by the prevailing party, *see Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 2529298, at *12 (D. Haw. June 28, 2012); *U.S. ex rel. Berglund v. Boeing Co.*, 2012 WL

/////

/////

6

1902599, at *4 (D. Or. May 24, 2012); *Arizona, Dept. of Law, Civil Rights Div. v. ASARCO, L.L.C.*, 2011 WL 6951842, at * 7 n.6 (Sept. 29, 2011) (finding "the stark contrast in hours expended on the work relevant in assessing the reasonableness of [party's] fee claim.").

While some cases have found little benefit in comparing the hours expended by the parties, circumstances vary among cases and there does not appear to be a per se rule of relevancy. Whether the district judge will ultimately find the information useful in deciding the pending fee motions remains to be seen. Suffice it to note here, the Ninth Circuit has made clear that such information can be a helpful guide in determining the reasonableness of time spent on a particular tasks. *Democratic Party of Washington State*, 388 F.3d at 1287. The question posed on this discovery motion is not whether the district judge should place any particular weight on the information, but rather whether the fee claimants may discover the information so that they can present it to the district judge in the first place. In light of the Ninth Circuit's characterization of such information as potentially helpful, it is discoverable for purposes of the pending fee motions.

Biotronik, however, raises a subsidiary issue. It argues that the reasonableness of the number of hours fee claimants expended is not at issue in the pending motions. Thus, it argues, information related to the number of hours H&K billed Biotronik to litigate this case is irrelevant. Biotronik insists that it does not contend that any of the hours spent on a particular task were excessive. Instead, Biotronik argues that work on particular tasks are simply not compensable because those tasks are not related to the claims upon which relator was successful. ECF No. 117 at 18.

The issue was a topic of considerable discussion at the hearing because it was not entirely clear from the joint statement. Mr. Myers addressed the issue at length, arguing adamantly that Biotronik is not challenging the reasonableness of the hours spent on any particular tasks. Mr. Myers clarified that Biotronik only challenges whether the relator is entitled to reimbursement for work on claims for which the relator was not successful--which in turn is determined by reference

/////

/////

7

to the settlement agreement.[3]  As Myers explained it, the only dispute is whether certain tasks relate to the claims covered by the settlement agreement, not whether the number of hours spent on any particular tasks was excessive.  As summarized by Myers, Biotronik is not challenging that relator's counsel actually expended the hours claimed, or that those hours were reasonably expended on a particular issue.  Instead, Biotronik challenges whether or not the relator prevailed on that issue for which the hours were expended and argues that any time spent on unsuccessful claims should be excluded.

Thus, Biotronik explicitly committed at the hearing that it does not dispute the reasonableness of the number of hours spent on any particular tasks.  Nonetheless, fee claimants' counsel disputed Mr. Myers characterization of the arguments Biotronik advances in its opposition to the pending fee petitions, and argued that Biotronik does indeed challenge as unreasonable the number or hours fee claimants expended in representing the relator.  Fee claimants' counsel directed the court's attention to pages 42 through 46 of defendant's opposition to attorneys' fees, arguing that those pages demonstrate that defendant is contesting the number of hours expended.  The court has thoroughly reviewed defendant's opposition, and agrees with Mr. Myers's characterization of defendant's argument.  Biotronik's opposition to the fee petitions argues that fee claimants impermissibly seek reimbursement for work that is not related to the successful claims covered by the parties' settlement agreement. ECF No. 100 at 18-24.  The opposition also argues that fee claimants seek compensation for work performed on certain tasks that are not compensable.  *Id*. at 24-31.  Significantly, Biotronik does not argue that an excessive amount of time was spent on any given task—only that some tasks were performed on claims for which the relator did not prevail.  As there is no dispute as to whether excessive time was spent on any particular task, comparing the amount of time H&K spent on this case or on any particular tasks has no bearing on the pending fee petitions.

/////

/////

---

[3] Biotronik argues that the settlement agreement covered a narrow and specific portion of the claims asserted by the realtor and that all the other claims in the complaint were dismissed.

1    Biotronik's opposition also argues that fee claimants are not entitled to attorneys' fees for
2    billing entries that are vague or constitute "block-billing." Such arguments go to the
3    reasonableness of the hours expended. However, access to defense counsel's billing records will
4    not assist the court in determining whether such requests are reasonable. *See Gauchat-Hargis v.*
5    *Forest River, Inc.*, 2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) ("While block billing is not
6    prohibited by law, court have reduced fee awards through an across the board "haircut" for such
7    practices.") (citations omitted). Fee claimants argue that they have a right to know whether
8    defense counsel's billing entries include billing "entries of the type Biotronik now attacks as
9    vague, duplicative, or 'block-billed.'" However, fee claimants fail to comprehend that they bear
10   "the burden of documenting the appropriate hours expended in the litigation." *Gates*, 987 F.3d at
11   1397. Whether H&K's billing records contain "block-billing" or vague entries is of no
12   consequence to the pending fee petitions, which do not concern H&K's billing practices. Any
13   issue with H&Ks billing practices is an issue between H&K and their client.

14   Finally, the court turns to the pages specifically cited by fee claimants' counsel at the
15   hearing, pages 42-46 of Biotronik's opposition. The argument at those pages specifically
16   concerns the number of hours spent by fee claimants' counsel in litigating the fee petitions and
17   not the underlying litigation. These pages bear out fee claimants' contention that Biotronik does
18   dispute the reasonableness of the number of hours spent on the attorneys' fee motions and the
19   requested discovery has relevance to that dispute. However, the dispute over this single issue
20   does not warrant disclosure of all of H&K's billing records for the past four years. Accordingly,
21   the court will require H&R to produce to fee claimants only billing statements for work
22   performed in relation to the fee dispute.[4] All other information sought as to the number of hours
23   billed by H&K for representing Biotronik is irrelevant and need not be produced.

24   /////
25   /////

---

[4] To the extent such records contain confidential or privileged information, which appears doubtful, such information can easily be redacted. In the alternative, the parties may present a stipulated protective order addressing the confidential information.

9

B. Prevailing Hourly Rate

Fee claimants' discovery requests also seek information related to the hourly rates charged by H&K's attorneys. Biotronik concedes that the hourly rates sought by fee claimants are in dispute. Nonetheless, Biotronik contends that the hourly rates H&K charges are irrelevant to the fee petitions because H&K is not located in Sacramento. ECF No. 117 at 14. "In addition to computing a reasonable number of hours, the district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." *Gonzalez*, 729 F.3d at 1205. Reasonable rates "are to be calculated according to the prevailing market rates in the relevant community.'" *Van Skike v. Dir. Off. Of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009). "The 'prevailing local rate' is calculated according to the rates of attorneys practicing in the forum district: here, the Eastern District of California-Sacramento" *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) (citing *Gates*, 987 F.2d at 1405).

While H&K's offices may be located outside the region, that fact is beside the point. Regardless of its location, the firm practices in this district, as is evidenced by their representation of Biotronik in this case. Accordingly, the rates H&K charges its clients for work it performs to litigate cases in this district has relevance to the prevailing market rate in Sacramento. Those rates are simply part of the universe of data from which one would determine the range for rates charged in this district by experienced and qualified attorneys to litigate cases of this nature. While H&K may command higher rates based on a number of factors, including the geographical location of their offices, the experience of their lawyers, the quality of their work, etc., the rates they charge to litigate in this district are relevant evidence bearing on an issue in dispute, i.e. the local prevailing rate for litigation in this district.[5] Accordingly, the court finds that this information is relevant and discoverable.

---

[5] Just as it would be inappropriate to exclude information that a firm with offices outside of this district charges rates for comparable work at the lower end the range, it is not appropriate to exclude rates from firms at the higher end simply because their offices are outside of the district. The relevant point is whether the rates charged are for litigating cases within this local market.

Fee claimants' discovery requests seek the "regular or customary" hourly billing rates for H&K's attorneys. To the extent that the reference to "regular or customary" refers to rates that differs from the rates H&K has charged its clients for litigation performed in this district, the information is not relevant to the determination of the prevailing hourly rate for Sacramento. Accordingly, the court finds that H&K need only produce documents indicating the rates they charge for work performed in this district, including the rates charged for work performed on the instant case.

IV. Conclusion

Accordingly, it is hereby ORDERED that fee claimants' motion to compel, ECF No. 113, is granted in part and denied in part as follows:

1. Defendant shall produce billing records related to work performed in relation to the pending fee petitions;

2. Defendant shall produce documents reflecting the hourly billing rates H&K's attorneys charge for work performed in this district; and

3. The motion in all other regards is denied.

DATED: March 20, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE