HOLLAND & KNIGHT LLP
Vince Farhat (State Bar No. 183794)
Christopher A. Myers (*Pro Hac Vice*)
Cheryl A. Feeley (*Pro Hac Vice*)
400 South Hope Street, 8th Floor
Los Angeles, California 90071-2040
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: christopher.myers@hklaw.com
Email: vince.farhat@hklaw.com
Email: cheryl.feeley@hklaw.com

*Attorneys for Defendant Biotronik, Inc.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; THE STATES OF ARKANSAS, CALIFORNIA, DELAWARE, DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MICHIGAN, MASSACHUSETTS, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, AND WISCONSIN, ex rel. BRIAN SANT RELATOR, <br><br> Plaintiffs, <br><br> vs. <br><br> BIOTRONIK, INC. and WESTERN MEDICAL, INC., <br><br> Defendants. | CASE NO. 2:09 – CV 03617 KJM EFB <br><br> Assigned to Kimberly J. Mueller <br><br><br> **DEFENDANT BIOTRONIK'S OPPOSITION TO WILSON'S *EX PARTE* APPLICATION FOR AN ORDER OF ENFORCEMENT** |

Defendant Biotronik, Inc. ("Biotronik") hereby opposes Wilson's *Ex Parte* Application for an Order of Enforcement (Dkt. No. 135).  The *Ex Part*e Application is a disingenuous attempt to re-cast a series of events and communications between the parties following the March 20, 2015 Order (Dkt. No. 124).  But, as explained herein, the reality of these events and communications is that Wilson manufactured a discovery "dispute" by acting unreasonably following this Court's March 20, 2015 Order, balked at following every Court procedure associated with resolving discovery disputes, and has now filed an *Ex Parte* application without ever engaging in the required meet and confer

1

process on the relief being sought herein.  Not only is the *Ex Parte* Application meritless, it has become crystal clear to Biotronik that the endgame for Wilson and his fees counsel is to delay this Court's resolution on the merits of his motion for fees, to continue litigating over collateral issues, and to generate unconscionable levels of "fees on fees".[1]  The Application should be denied outright, and this litigation should move forward whether or not Wilson receives discovery documents from Biotronik.[2]

### A.    Biotronik complied with its obligations following the Court's March 20, 2015 Order.

Once again, Wilson has gone to great lengths to create a dispute with Biotronik such that it can file an *Ex Parte* application painting Biotronik as a bad actor—apparently, hoping that the Court will be confused enough about the attorneys' fees litigation in this case that it will entertain the unnecessary issues and expenses associated with this Application.  But this particular Application is a complete rewrite of history, and Wilson's intentions are transparent.  Biotronik did not inappropriately withhold discovery, "fail" to affirmatively seek a protective order, or otherwise delay these proceedings.  While Wilson may disagree with Biotronik and may be frustrated that Biotronik has not acceded to his unreasonable positions, that does not mean that Biotronik has "failed" to do anything.

As of March 20, 2015, Wilson's Reply brief was due in a week—on March 27, 2015.  Following this Court's March 20, 2015 Order, and despite not agreeing that Wilson's Reply brief should be held up for the discovery in this case,  Biotronik attempted to fully cooperate with Wilson

---

[1]    In the past week, Wilson has filed 36 pages with the Court, seeking various relief and making a slew of arguments, including: 1) a 21-page *Ex Parte* Application (Dkt. No. 130); 2) an eight-page supplement to that Application (Dkt. No. 132); 3) this nine-page *Ex Parte* Application for an Order of Enforcement (Dkt. No. 135); and 4) a four-page "Reply" to Biotronik's Court-ordered Response relating to the potential referral to a magistrate (Dkt. No. 139).  Yet, Wilson claimed to be incapable of filing his long-overdue Reply brief or a simple motion to seal during this same time frame.

[2]    Wilson's Reply brief—a brief intended to finish up a briefing cycle and respond to legal arguments in Biotronik's Opposition—should not be put on hold to wait for the resolution of a discovery dispute on an untimely motion to compel, particularly where Wilson never filed or joined in the motion and given Wilson's actions following the March 20, 2015 Order.

2

to provide him the documents as quickly as possible.[3]  Biotronik began working toward production *immediately*, despite the fact that the timing problem at issue was one that Wilson had himself created by 1) never filing a motion to compel, and 2) attempting to piggy-back on an untimely motion to compel filed by another party—a party that has since withdrawn its motion for attorneys' fees and its motion to compel.[4]  On Monday, March 23, 2015, the first business day after receiving the Court's Order, Biotronik's counsel informed both sets of fees counsel that it had begun working with the company to gather the information ordered produced, that it was planning to produce responsive material by close-of-business on March 27, 2015, and that the production would be contingent on being able to reach agreement on a protective order.  Biotronik also informed the parties that it would circulate a draft protective order within the next day or so.

Notably, Biotronik made this proffer regarding production (and ultimately decided to forego any formal objection) despite Biotronik believing it has several valid bases for objecting to this Court's Order for one key reason—Biotronik does not want to multiply these proceedings any further.[5]  It wants resolution of the *<u>substantive</u>* issues of the case—Wilson's underlying Motion for Attorneys' Fees.

---

[3]     Wilson had already indicated that he would be seeking an extension of the Reply brief by at least one additional week.

[4]     The Motion to Compel by KCR (Dkt. No. 113) was entirely untimely.  KCR waited more than two months after the meet and confer on these issues—and after the initial reply filing due date and after the original hearing date—to file its Motion to Compel.  Wilson never filed a motion to compel and never joined KCR's motion. Biotronik and KCR have since entered into a settlement, and KCR's motion has been withdrawn.

[5]     ***First***, Biotronik does not agree with the Order to the extent that it purports to be an order relating to "fee claimants'" motion to compel.  The motion to compel was filed by KCR. ***Second***, Biotronik stands by its position set forth in its opposition to KCR's Motion to Compel that Holland & Knight's rates are not relevant to the lodestar determination by this Court. ***Third***, Biotronik disagrees that the attorneys' fees Biotronik has incurred litigating the motions for attorneys' fees has any relevance whatsoever to the motions.  The Court indicated that the basis for the ruling was that Biotronik had put at issue the amount of time spent by fees counsel during the attorneys' fees litigation.  But Biotronik's argument regarding "fees on fees" provides no basis for a finding that Biotronik's records would be at all relevant in that determination. Instead, Biotronik's argument regarding "fees on fees" identified the extra expenses caused by the filing of Relator's two different motions by two different "fees counsel"—four sets of lawyers with divergent views and interests regarding the resolution of the motions.  Further, the Court did not consider that neither KCR nor Wilson had actually submitted evidence of their own time expended on the fees litigation.  Thus, any hypothetical comparison between fee claimants' expenses and those of Biotronik in the same time frame is not possible.  Indeed, even if Wilson amended his motion to include additional "fees on fees", KCR has withdrawn its motion for attorneys' fees and will not

3

On the morning of March 25, 2015, Biotronik sent a draft "Stipulated Order Regarding Confidentiality of Discovery Material and Non-Waiver of Attorney-Client Privilege and Work Product Protection" (the "Draft Protective Order"). (*See* Exhibit 1)  The Draft Protective Order contains provisions dealing with, *inter alia*, designating materials as confidential, disclosure obligations, and filing documents with a court.  Notably, it also contains a provision related to challenging a party's designation of confidentiality by motion.  Contrary to Wilson's statements throughout his *Ex Parte* Application, the Draft Protective Order had a mechanism in it for challenging confidentiality designations.  Wilson would have had the documents on March 27, 2015, and he could have challenged the propriety of the designations on March 31, 2015, if he had chosen to do so.  Biotronik's proposed process would have accomplished dual goals of providing Wilson with the discovery material a week before his reply was due and providing Wilson with a mechanism for challenging Biotronik's assertions of confidentiality.

After Biotronik sent the Draft Protective Order, Wilson raised several questions about the draft, including questions about sealing of documents designated as confidential.  Throughout multiple exchanges on March 25, 26, and 27, 2015, Wilson's position finally became clear: he would not agree to any stipulation that would provide confidential treatment of documents because he did not agree that the documents were confidential.  Despite not having any time in the briefing schedule, Wilson wanted Biotronik either to agree to not mark any documents confidential or to litigate the confidentiality issue before the production and before he started to draft his Reply brief.  To make matters worse, Wilson refused to suggest or work toward any *process* for resolving such confidentiality designation issues.  Biotronik asked Wilson to proffer alternative language on a process he would be amenable to in order to resolve a designation dispute so that he could get the documents and get the long-overdue Reply brief on file.  Wilson refused to proffer any such language

be amending its request.   Thus, any comparison of Biotronik's fees related to the fees litigation to the fee claimants' fees is no longer possible.

4

(at one point saying that proffering such language would be "premature"), and he failed to offer any protection of the documents. Biotronik therefore did not produce the documents on March 27, 2015. Given that Wilson purportedly "needed" the documents for his Reply brief and given that it would be impossible to actually litigate confidentiality without giving Wilson the documents under some temporary protection, Biotronik was perplexed by Wilson's refusal to discuss *any* process whereby Wilson could actually get the documents and the parties could deal with designation issues.

However, the reason for Wilson's obstinacy on any stipulation for handling confidentiality issues became clear on March 30, 2015 and March 31, 2015, when Wilson explained in a lengthy email and then a 21-page *Ex Parte* Application to the Court that he was seeking an indefinite extension of the Reply briefing date and the hearing date (perhaps, he suggested, to May or June) based on a host of issues including a need to examine the impact of KCR settling; the purported "failure" of Biotronik to produce documents; fees counsel's recovery from shoulder surgery (which, despite having submitted a 21-page filing—was purportedly preventing work being done); and, later (in a supplemental filing) a sore throat of Mr. Wilson himself. In short, rather than working on a stipulation that could have addressed the confidentiality designations and/or the mechanisms to resolve confidentiality disputes, Wilson opted use the "dispute" he had just manufactured as one of the bases for an indefinite protraction of the fees litigation.

In fact, it was not until *after* Wilson filed his *Ex Parte* Application (to which Biotronik prepared a response) that he, for the first time, proffered a process related to the issues of confidentiality. On April 1, 2015, Wilson sent an email suggesting a process whereby, *inter alia*, Biotronik would submit within three days, "its portion of a joint statement supporting any claim of confidentiality over the discovery, including any statutes or other authority that would require the filing of the discovered material under seal"; Wilson's counsel would then have five days to respond; the parties would have three days to meet and confer and file the joint statement; and the Magistrate

5

Judge would then conduct a hearing.  Biotronik had substantial questions and concerns with the extremely tight timing of the proposal (particularly in light of the way Wilson had "jammed" Biotronik on the last Joint Statement process—providing 45 hours for an Opposition to a motion that was more than two months in the making) and also did not agree that briefing and resolution of sealing issues should serve as any basis for holding up the Reply briefing.

When the parties discussed that proposal on April 3, 2015, Biotronik pointed out its concerns and also suggested that Wilson should provide a new framework regarding a proposed process, in light of the ruling on the *Ex Parte* Application and his Reply being due on April 17, 2015.  Wilson refused to redraft his proposed process, indicated that he felt his meet-and-confer obligations had been met, and informed Biotronik that he would simply file an *Ex Parte* Application.  Biotronik repeatedly explained that it did not understand what the Application would be seeking in terms of the substantive briefing (a resolution of a protective order, resolution of the confidentiality designations themselves, and/or resolution of potential sealing issues), and thus could not tell Wilson whether it could agree to the relief requested.  Wilson repeated that he would simply file the Application with the Court and let the Court handle it.  Following the phone call, Biotronik made several additional attempts to develop a process for resolving the confidentiality designations.  They were not accepted by Wilson.

In short, it is entirely unfounded to say that Biotronik refused to comply with any obligation, when Wilson refused to proffer any suggestions on a process to resolve confidentiality issues (with each other or with Court involvement) and instead opted to file a 21-page *Ex Parte* Application.  Similarly, the notion that Biotronik somehow "failed" by not filing a request for a protective order is nonsense.  Biotronik did what was required under the rules relating to discovery disputes—*i.e.*, it attempted to resolve them through a meet and confer process and did not simply file an *ex parte* application.  Biotronik was fully justified in attempting to work out a protective order at the time—it

6

was the only option that had any hope of keeping the case on track, given an untimely motion to compel.  Indeed, given that Biotronik was told repeatedly between March 20, 2015 and March 31, 2015 that fees counsel for Wilson was not able to meet the original (and then re-set) deadlines for his Reply brief due to a host of excuses that were recapitulated in its *Ex Parte* Application on March 31, 2015, a motion for a protective order would have accomplished nothing.  Wilson would have simply moved for extensions of time based on an ever-growing laundry list of reasons.

           **B.**       **Biotronik was entitled to withhold documents while it attempted to negotiate proper protection of the documents.**

As described above, Biotronik has not produced any documents yet because Wilson has refused to hold them in confidence.  Biotronik worked tirelessly to proffer suggestion after suggestion about how to move forward with this litigation, but at the end of the day, Wilson's true interest (at least prior to receiving a ruling that the merits hearing date will remain April 24, 2015) was to extend out further these proceedings.

Biotronik had every right to hold back the production without any assurance of confidential treatment by Wilson.  First, contrary to Wilson's suggestions otherwise, the confidentiality issue was not "addressed" in the parties' joint statement.  Biotronik included an argument about the burden associated with producing five years of attorneys' fees records because of redactions necessary based on confidential attorney-client communications and attorney work product.  Biotronik has always believed—notwithstanding the redaction issue associated with privilege and attorney-client communications—that its invoices from its lawyers and the rates it negotiates with them are confidential.  If the Motion to Compel had addressed this issue and affirmatively sought a finding that the documents were *not* confidential, Biotronik would have addressed such issue.  But contrary to Wilson's suggestions otherwise, this issue was *not* briefed by the parties, nor was it decided by the March 20, 2015 Order.

7

Further, Biotronik was absolutely justified in its position that the information that is subject to this Court's March 20, 2015 Order is confidential and warrants protection under Federal Rule of Civil Procedure 26(c).  Federal Rule 26(c) applies to documents exchanged in discovery, and allows a party to seek protection from annoyance, embarrassment, oppression, or undue burden or expense for good cause shown.  Under Federal Rule of Civil Procedure 26(c)(1)(G), for example, the court may require that confidential commercial information "not be revealed or be revealed only in a specified way."

A different, more demanding, standard applies where a party seeks to protect (*i.e.*, seal) information that is filed with the court in connection with a dispositive motion.  *Pintos v. Pacific Creditors Ass'n*, 605 F3d 665, 678 (9th Cir. 2010).  In such situations, the party must establish a "compelling reason supported by specific factual findings" for protecting such information in order to overcome the public interest in access to judicial records.  *Id.*

As noted, this more demanding "compelling reason" standard only applies to information filed in connection with a dispositive motion, and therefore would not apply here even if the documents at issue were ultimately submitted to the court.  *See Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("Although we understand the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.), it makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive sanctions motion filed with the court.")  Motions for attorney fees have been treated as non-dispositive; therefore any related motions to seal are subject to the good cause standard. *Medicis Pharmaceutical Corp. v. Acella Pharmaceuticals, LLC*, 2012 WL 2260928 (D. Ariz. 2012) (applying good cause standard to motion seal filed in connection motion for attorney fees under 35 U.S.C. 285); *see also Digital Reg of Texas,*

8

*LLC v. Adobe Systems, Inc.*, 2015 WL 604055 (N.D. Cal. 2015).[6]  In fact, all of the authorities submitted by Wilson—except the *Traylor Bros.* case—applied the good cause standard to motions to seal filed in connection with attorney-fee motions.[7]

Throughout the parties' discussions of these issues, however, Wilson has conflated these two standards and refused to agree to any type of confidential treatment of documents before the issue of whether the documents should be sealed was litigated.  In taking this position, Wilson has failed to recognize that there is authority in this jurisdiction holding that information about specific attorney billing rates for a specific client is subject to protection—even under the compelling reason standard, much less the  good cause standard.  This Court has noted that "billing rates which are not publicly known and are 'competitively sensitive' ha[ve] been determined to warrant sealing."  *E&J Gallo Winery v. Proximo Spirits, Inc.*, 2012 WL 1635190 at *1 (E.D. Cal. 2012).  The Court  there held that "review of the specific documents reveals that certain of the information detail confidential billing rate information that, if became known, would likely impact the law firm's competitiveness."  *Id.*.  Many other courts within the Ninth Circuit have also held that attorney billing records are subject to protection/sealing. *See China Int'l Travel Services (USA), Inc. v. China & Asia Travel Service, Inc.*, 2008 WL 5480840 (N.D. Cal. 2008) (allowing billing records to be filed under seal in connection with attorney fee award); *Mine O'Mine, Inc., v. Calmese*, 2012 WL 1279827 at *4 (D. Nev. 2012)

---

[6]    Thus, the good cause standard would also apply to a sealing motion in this case, if, for example, Wilson were to submit the documents at issue to the court.

[7]    Moreover, the cases cited by Wilson are distinguishable on their facts.  In *Procaps S.A. v. Patheon Inc.*, 2013 WL 5928586 at *3 (S.D. Fla. 2013), the court held that good cause did not exist because the attorneys' hourly rates had been publicly disclosed in other cases and were therefore not confidential.  That is not the case here.  In *Linex Technologies, Inc. v. Hewlett Packard Company*, 2014 WL 6901744 (N.D. Cal. 2014), the party seeking to seal its fee information was the party seeking fees, and the court reasoned that if such information is sealed, "the final fees award appears to be drawn from thin air."  Similarly, in *Muench Photography, Inc. v. Pearson Education, Inc.*, 2013 WL 6698465 (N.D. Cal. 2013), the party seeking to seal its fee information was the party seeking fees, and the court reasoned, "Pearson is not allowed to petition the Court for fees but hide from the public the basis for its request."  *Id.* at *2.  Finally, in *Traylor Bros. v. San Diego Unified Port Dist.*, 2009 U.S. Dist. LEXIS 53827 (S.D. Cal. 2009), the issue was whether to seal based on attorney-client privilege rather than confidential commercial information, and the court denied the defendant's motion to seal because it had failed to file affidavits or otherwise make any showing in support of its assertion of privilege.  *Id.* at *6.

DEFENDANT BIOTRONIK'S OPPOSITION TO *EX PARTE* APPLICATION FOR AN ORDER OF ENFORCEMENT

(granting motion to file billing records under seal because records contained negotiated billing rates which were not generally available to the public); *Belks Media v. OnlineNIC*, 2010 WL 7786122 at *5, n.6 (N.D. Cal. 2010) (allowing attorney invoices to be filed under seal).

Based on the foregoing authorities, Biotronik clearly has (and had) a good faith basis for asserting that the documents at issue are protectable under the good cause standard, which is the standard that applies for purposes of Biotronik's production to Wilson, and is the standard that will apply if/when the documents at issue are filed with the Court. And even if the "compelling reason" standard were applicable, the foregoing authorities demonstrate that Biotronik could meet that standard as well.

**C.    Given Wilson's refusal to work towards a stipulated protective order, the Court should either deny the request outright or enter a protective order requiring Wilson to maintain confidentiality of documents produced by Biotronik in discovery.**

Biotronik repeatedly attempted to establish a process for resolving the confidentiality designations issue as a part of discovery. Biotronik also repeatedly explained that it would shoulder the burden of handling the issue as part of a sealing motion, if Wilson would simply agree to protect the documents and file the documents under seal. But Wilson's feet-dragging and requests to the Court to postpone the hearing date have not been successful, and Biotronik will continue to oppose any movement of the hearing date in response to this Application. Therefore, Biotronik respectfully requests that the Court deny the request in its entirety and put the burden back where it belongs—on the party who wishes to receive and potentially use confidential documents but has been unwilling to recognize its full responsibility in manufacturing the timing crisis at hand.

Alternatively, if the Court is willing to entertain this Application, Biotronik asks that the Court enter the protective order attached to this filing at Exhibit 1—the document proffered to Wilson 13 days ago and the document that Wilson simply chose to ignore and not comment on. If Wilson wishes to challenge designations prior to his reply filing by motion, he may do so and take upon himself

10

resolution of the issue prior to the due date for the Reply.[8] And if such issue has not yet been resolved and Wilson opts to include one or more documents produced in discovery as an attachment to his filing, he can file under seal, and Biotronik will bear the burden of moving in support of continued sealing.[9]

### D.    Conclusion.

As indicated by the multiple recent filings in this case, Wilson wants to have his cake and eat it too. He wants to engage in meet-and-confers on issues he deems appropriate and only when *he* deems those issues to be ripe for discussion. He wants Biotronik to shoulder the burden of dealing with timing crises Wilson created. He wants Biotronik to be forced to respond to multiple, inappropriate submissions after balking at the Local Rules and motions calendars of this Court. And he wants Biotronik and this Court to revolve around his counsel's medical, family, and social schedule. Biotronik has gone above and beyond its obligations to Wilson—on the issues raised in this and every other *Ex Parte* Application, and respectfully asks this Court to deny the petition in its entirety. The procedural posture Wilson finds himself in is of his own making, and neither Biotronik nor the Court should be required to accommodate him any further.

---

[8]    Unlike Wilson, Biotronik does not assume that the Court will handle repeated *ex parte* applications or other emergency procedures whenever a party opts to seek court relief rather than continuing discussing the discovery dispute.

[9]    To the extent the Court is inclined to "merge" the discovery and sealing issues, there are ways to minimize the burden on the parties here. The Court could order Biotronik to file the documents with the Court (under seal), serve the filing on Wilson, and prepare a motion to seal. Wilson could then write his Reply without disclosing the information in the confidential documents and bear no "burden" of needing to file a notice of sealing or motion to seal during the same general time frame he is writing his reply. Biotronik will shoulder that burden, the case can move forward, and this Court can assess the validity of the continued sealing as it does routinely.

11

DEFENDANT BIOTRONIK'S OPPOSITION TO *EX PARTE* APPLICATION FOR AN ORDER OF ENFORCEMENT

Dated: April 7, 2015                           Respectfully Submitted,

                                               /s/ *Vince Farhat*

                                               HOLLAND & KNIGHT LLP
                                               Vince Farhat (State Bar No. 183794)
                                               Christopher A. Myers (*Pro Hac Vice*)
                                               Cheryl A. Feeley (*Pro Hac Vice*)
                                               400 South Hope Street, 8th Floor
                                               Los Angeles, California 90071-2040
                                               Telephone: (213) 896-2400
                                               Facsimile: (213) 896-2450
                                               Email: vince.farhat@hklaw.com
                                               Email: christopher.myers@hklaw.com
                                               Email: cheryl.feeley@hklaw.com

                                               *Attorneys for Defendant Biotronik, Inc.*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 7th day of April, 2015, I caused a true and correct copy of the foregoing to be served via electronic and regular mail on the following:

Jeremy L. Friedman, Attorney at Law
(State Bar No. 142659)
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530 9087
Email: jlfried@comcast.net

/s/ *Vince Farhat*

HOLLAND & KNIGHT LLP
Vince Farhat (State Bar No. 183794)
Christopher A. Myers (*Pro Hac Vice*)
Cheryl A. Feeley (*Pro Hac Vice*)
400 South Hope Street, 8th Floor
Los Angeles, California 90071-2040
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: christopher.myers@hklaw.com
Email: vince.farhat@hklaw.com
Email: cheryl.feeley@hklaw.com

*Attorneys for Defendant Biotronik, Inc.*

13

DEFENDANT BIOTRONIK'S OPPOSITION TO *EX PARTE* APPLICATION FOR AN ORDER OF ENFORCEMENT